UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21890-CV-HOEVELER

ACCESS FOR THE DISABLED, INC.,
a Florida not-for-profit corporation,
and ROBERT COHEN, individually,

    Plaintiffs,

v.

HIALEAH FEE COMMONS, LTD.,
a Florida limited partnership,

    Defendant.
_____/

ORDER

BEFORE the Court are two motions: (1) the plaintiffs' amended motion to enforce the settlement of this ADA lawsuit, and (2) the plaintiffs' motion to quash the defendant's requests for admission. The motions have been fully briefed and are ready for a decision. For the reasons that follow, the plaintiffs' amended motion to enforce is GRANTED and the plaintiffs' motion for a protective order is DENIED as moot.

I. Background

A. The underlying lawsuit

The defendant, Hialeah Fee Commons, Ltd., owns the Westland Commons Shopping Center in Hialeah, Florida. The mall features a Wynn-Dixie, Wendy's Restaurant, Walgreens, Marshall's, Miami Subs, and various other public businesses. On July 2, 2008, the

plaintiffs filed this ADA lawsuit concerning architectural barriers at Hialeah Fee Commons that prevented people with disabilities from enjoying full access to goods and services. In particular, the plaintiffs alleged in paragraph 11 of the complaint that the routes between the various stores were not wheelchair-accessible; the layout and construction of the handicapped parking spaces did not meet ADA guidelines; and some of the leased tenant spaces such as Wendy's and Miami Subs had counters, restrooms, and signage that violated the ADA. The parties settled the case without a trial and submitted a proposed Consent Decree signed by both sides for the Court's approval. The Court approved the settlement and entered the Decree February 16, 2009, closing the case but retaining jurisdiction to enforce the settlement.

### B. The Consent Decree

In paragraph 1 of the Decree, "[t]he parties acknowledge that the modifications described in this Consent Decree shall be implemented according to the standards set out in the ADAAG." Sub-parts A through E of the Decree list six general categories of improvements the defendant must undertake, such as "Parking Spaces" and "Public Restrooms." Under each general category, there are several specific modifications to be made, for a total of 33 separate modifications (according to the defendant's calculation, which is uncontested).

In paragraphs 2 and 3 of the Consent Decree, the defendant

agreed to complete the modifications by August 3, 2009. The defendant also agreed to submit a property report summarizing its modifications by August 3, 2009. In addition, the parties agreed in paragraph 6 that:

> A final property reinspection conducted by Plaintiffs will take place on or after August 17, 2009 to ensure that the modifications to the subject property required below for barrier removal have been completed.

It is undisputed that Hialeah Fee Commons performed almost all of the required modifications by August 3, 2009, but apparently never submitted the necessary report summarizing its efforts. Similarly, although the Consent Decree instructed the plaintiffs to perform a "final property reinspection. . . on or after August 17, 2009," the plaintiff did not reinspect the property until March 29, 2010, when it hired Mr. Pablo Baez of a company called Herbert Neff & Associates to visit the shopping center. On April 1, 2010, Mr. Baez's provided a letter to plaintiffs' counsel identifying (in a rather perfunctory manner) several items of the Consent Decree that were not completed.

C.  **Plaintiff's first motion to enforce the Consent Decree**

After receiving Mr. Baez's property inspection report, plaintiffs' counsel waited three months to file a motion to enforce the Consent Decree [ECF No. 28, June 24, 2010]. Even though the motion to enforce was predicated solely on Mr. Baez's findings, the plaintiffs did not: (1) attach the Baez report to the motion, (2)

3

make reference to the report, or (3) identify any specific aspect of the Consent Decree that was violated. In fact, the plaintiffs' entire motion was six sentences long, and in substance stating only that "Defendant has not complied with the terms of [the Consent Decree]." The defendant filed an opposition brief on June 29, 2010 [ECF No. 29], arguing (among other things) that the plaintiffs failed to state with particularity the grounds for seeking relief from the Court, in violation of Rule 7(b) of the Federal Rules of Civil Procedure.[1] The defendant claimed that the plaintiffs' six-sentence submission was so devoid of facts that it was impossible to respond.

D.  **Amended motion to enforce the Consent Decree**

In response to the defendant's objection to the first motion, the plaintiffs filed an "Amended Motion to Enforce Consent Decree (for Injunctive Relief)" about a month later on July 26, 2010, without leave from the Court ("Amended Motion"). The Amended Motion included a copy of Mr. Baez's inspection report and an affidavit by

---

[1] Rule 7 is a general rule that applies to all motions and requires that any request for a court order must be made by motion, which shall (1) be in writing, unless made during a hearing or a trial, (2) state with particularity the grounds for seeking the order, and (3) state the relief sought. See Fed. R. Civ. P. 7(b). The particularity requirement ensures the opposing party has a meaningful opportunity to respond and the Court has enough information to process the motion correctly. See Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 793 (8th Cir. 2003),

Mr. Baez.[2] The plaintiffs' Amended Motion alleges with greater particularity four aspects of the Consent Decree the defendant violated:

1) According to Mr. Baez, the defendant failed to construct an ADA-compliant curb-ramp in front of Walgreen's, because the ramp installed by the defendant contained an unacceptable half-an-inch change in level. Also, Mr. Baez noted, a) a broken bollard obstructing access to Walgreen's from the public sidewalk, and b) shopping carts partially obstructing the wheelchair route.

2) According to Mr. Baez, the defendant failed to comply with the Decree's requirement that: "Wendy's shall provide at least 5% of its tables to comply with ADA Standard 4.32."

3) Mr. Baez's observed that the defendant did not make the following necessary modifications to the men's bathroom in Miami Subs: a) installing an automatic door opener; b) lowering the mirrors so that the bottom edge of the reflecting surface was no higher than 40 inches above the floor, and c)

---

[2] In the affidavit, Mr. Baez simply states, (1) he is familiar with the Consent Decree, (2) he personally conducted the inspection of Hialeah Fee Commons and prepared the report, while working as an employee of Herbert Neff & Associate, and (3) he reaffirms his findings in the report. The affidavit does not provide any other information about Mr. Baez's vocation, background, or qualifications; the methods he used in conducting his inspection or formulating his conclusions; the procedures he used for taking physical measurements and making mathematical calculations about, e.g., whether five percent of the tables at Wendy's were handicapped accessible, and so forth.

providing a toilet-paper dispenser in the location required by the ADA.

4) Mr. Baez documented the absence of an automatic door in the men's bathroom at Wendy's, in violation of the Consent Decree. Further, he noted that there was only 24 and 3/4 inches of clearance under the sink in the Wendy's mensroom, and the plumbing under the sink was not insulated, "which is also in violation of the ADA."

## II. Analysis

The defendant presents several arguments why the Court should deny the plaintiffs' Amended Motion to Enforce the Consent Decree, which I will address in turn.

### A. Failure to "meet and confer"

The defendant contends that the plaintiffs' Amended Motion should be stricken or denied because the plaintiffs filed it without first offering to "meet and confer" with the defendant's lawyer. The "meet and confer" requirement in this district is established by Local Rule 7.1.A.3, which holds that:

> Prior to filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good

6

>        faith effort to resolve by agreement the
>        issues to be raised in the motion.

Although it is true plaintiffs did not "meet and confer" prior to filing its motion, the plaintiffs' motion is a motion for injunctive relief, which is exempted from the conference requirement in Local Rule 7.1.A.3.

**B.   Failure to obtain leave from the Court**

The defendant urges the Court to strike or deny the Amended Motion because the plaintiffs filed it without permission from the Court, and only after the defendant argued that the first motion lacked the particularity required by Rule 7 of the Federal Rules of Civil Procedure. Indeed, the original motion contained no reference to Mr. Baez's inspection report or any of the specific architectural barriers being challenged. This omission was especially inexplicable considering that, when plaintiffs' counsel filed the original six-sentence motion, he apparently did so with the hope and expectation that Hialeah Fee Commons would be forced to litigate the ADA compliance issues without any additional factual information about which aspects of the Consent Decree were being challenged.[3]

---

[3] In the plaintiffs' motion to quash the defendant's requests for admissions [ECF No. 37, Sept. 16, 2010] the plaintiffs stress that "[i]t is irrefutable that the discovery deadline [set by the Court's pre-trial scheduling order] has long since expired" and that plaintiffs are "not required to respond in **any** manner if discovery is propounded after the deadline." In other words, if the plaintiffs had their way, the defendant would have been forced to rely only on the information in the plaintiffs' endemic motion to

7

In any event, although the plaintiffs' original motion to enforce lacked particularity, the plaintiffs clarified their claims by filing the Amended Motion, which includes Mr. Baez's inspection report. Under these circumstances, striking the Amended Motion on the grounds that it was filed without permission is not the appropriate remedy. Instead, plaintiffs' recovery of an award of attorney's fees from the Hialeah Fee Commons shall be reduced by the reasonable attorney's fees the defendant's lawyer incurred in responding to the plaintiffs' first motion to enforce the consent decree.

C.  **Equitable arguments**

The defendant draws attention to paragraph 6 of the Consent Decree, which instructs the plaintiff to perform a re-inspection: "on or after August 17, 2009 to ensure that the modifications to the subject property required for barrier removal have been completed." It is undisputed that the plaintiffs did not perform a re-inspection until April 2010. Although April 2010 is quite obviously a date "on or after" August 2009, the defendant nevertheless argues that, reading the contract as a whole, the Court should conclude the plaintiffs' April 2010 re-inspection was too late. The Court need not entertain this argument, however, since the defendant admittedly failed to meet its August 3, 2009

---

enforce to learn which aspects of the Consent Decree were being challenged.

deadline contained in paragraph 3 of the settlement to "submit to Plaintiffs' counsel a report summarizing the action [defendant] has taken pursuant to this Consent Decree." The Court cannot sanction the plaintiffs for delaying the inspection process when the defendant itself failed to exchange the required report that would have facilitated the re-inspection. The Court therefore rejects the defendant's arguments based on equitable doctrines of estoppel or laches.

D.   **Lack of subject matter jurisdiction**

This ADA lawsuit was commenced in federal court based on the Court's original jurisdiction under 28 U.S.C. § 1331. When the Court entered the Consent Decree and closed the case, the Court retained jurisdiction to preside over future proceedings to enforce the settlement. When a district court expressly retains jurisdiction to enforce a settlement agreement, the district court has jurisdiction to enforce it. See Disability Advocates and Counseling Group, Inc. v. E.M. Kendall Realty, Inc., 366 Fed. Appx. 123, 125 (11th Cir. 2010) (unpublished) (citing Kokkonen v. Guardian Life Ins., 511 U.S. 375, 380-82 (1994); Am. Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315, 1320-21 (11th Cir. 2002). Because the Court order entering the Consent Decree and closing the case expressly retained jurisdiction to enforce the settlement, the defendant's lack-of-jurisdiction arguments are without merit.

9

**F.      Substantive violations of the Consent Decree**

Because the Consent Decree has attributes of an ordinary contract, the Court resorts to principles governing general contract law to determine whether there has been a material breach of the agreement. See Schwartz v. Florida Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987); Crosby Forrest Products, Inc. v. Byers, 623 So. 2d 565, 567 (Fla. 5th DCA 1993). Even though this Consent Decree arose under the ADA, Florida contract law directs the analysis. See Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000) (applying state law to determine the enforceability of settlement agreement under the ADA); Hayes v. National Serv. Indus., 196 F.3d 1252, 1253 (11th Cir. 1999) (applying state law to enforceability of settlement agreement arising under Title VII).

In opposing the plaintiffs' claims about the curb-ramp and access barriers near the Walgreen's entrance, the defendant submitted an affidavit by Steven Bach, whose construction firm Associated Concrete Industries, Inc., was the company hired by Hialeah Fee Commons to install an ADA-compliant curb-ramp near Walgreen's. In his affidavit, Mr. Bach states he installed the ramp last summer and it complied with the ADA's slope and construction standards. As a result of the pending motion to enforce, Mr. Bach directed his foreman to re-inspect the ramp to verify it was ADA compliant, and the foreman verified that it was. According to Mr.

Bach's affidavit, the foreman's inspection further disclosed that the bollard referenced by Mr. Baez was more than 44 inches away from intruding into the wheelchair path, which is in conformity with the ADA. Finally, Mr. Bach sent an independent concrete specialist to inspect the same items, and the second inspection produced identical results: The curb-ramp and alleged bollard did not violate the ADA. In sum, the defendant presented evidence from two concrete specialists familiar with the ADA, who both agreed there were no access barriers to the Walgreen's. On the other hand, although Mr. Baez reached a different conclusion about the ramp and nearby bollard, the plaintiffs failed to provide any information about Mr. Baez's qualifications, or about the methods and calculations he used to reach his conclusions. The plaintiffs' submissions do not satisfy the Court that the defendant breached the Consent Decree with respect to Walgreens.

Next, the plaintiffs argue in the Amended Motion that "[a]t least 5% of the tables in Wendy's still do not comply with ADA Standard 4.32." The Court agrees with the defendant that this contention does not state with sufficient particularity which aspect of the Wendy's seating arrangement is unacceptable; nor do Mr. Baez's observations included in the report provide good cause for the Court to conclude the defendant violated its obligation under the Consent Decree. He simply says the amount of accessible tables "is not provided as required by ADA Standard 4.32" and

11

includes a small photograph of part of the seating area in the Wendy's Restaurant.

The plaintiffs also challenge three aspects of the modifications to the Miami Subs men's bathroom: 1) the bathroom mirror was slightly less than an inch too high off the floor; 2) there was no automatic door opener to enter the men's room; and 3) there was no ADA-compliant toilet-paper dispenser. Based on the photograph taken by Mr. Baez, it appears the reflecting surface of bathroom mirror is perhaps about 40 and ½ inches above the floor, rather than 40 inches. However, the Court has some apprehension about the reliability of Mr. Baez's findings on this point. For example, the mirror dispute turns on only a faction of an inch and yet the single photograph of the scene depicts the measuring tape near the lower edge of the mirror; it does not depict how the end of measuring tape is positioned against the finished floor. Additional evidence would be crucial since the height difference seems to be *de minimus*.[4] The Court is not satisfied the plaintiffs have established a breach of the Consent Decree with respect to the

---

[4] Although the plaintiffs casually refer to Mr. Baez as an "expert" in their motion papers, there is no evidence he is an expert at anything. The Court also notes Mr. Baez states in paragraph 4 of his inspection report: "[t]he mirror has the bottom edge of the reflecting surface 41 inches above the finished floor *and only 26 inches of knee clearance is provided*." (Emphasis added.) Presumably, the "26 inches of knee clearance" refers to the height of the bathroom sink. But the plaintiffs have not cited any provision in the Consent Decree governing the height of bathroom sinks.

12

mirror. On the other hand, the undisputed documentary evidence demonstrates there is no automatic door in the Miami Subs men's bathroom; further, the plaintiffs' allegation about the location of the toilet-paper dispenser is also uncontradicted and consistent with the documentary evidence. Thus, the Court concludes the defendant has indeed failed to meet its obligations under the settlement agreement to install these two items in Miami Subs. Mr. Baez also observed and documented the absence of an automatic door in the men's bathroom at Wendy's, and the defendant has conceded this point as well, by failing to present arguments or evidence to rebut it.[5] This also constitutes a material violation of the settlement agreement.

## G.   Plaintiffs' motion for a protective order

After the plaintiffs filed the Amended Motion to Enforce, the defendant asked the plaintiffs to answer a set of "requests for admissions." In response, the plaintiffs moved for a protective order September 16, 2010. According to the plaintiffs, the defendant is not allowed to conduct discovery because the pre-trial discovery deadline has passed. If the plaintiffs had conferred with the defendant before filing the motion, as dictated by Local Rule

---

[5] Mr. Baez also noted in his report there was only 24 and 3/4 inches of clearance under the men's bathroom sink in Wendy's, and the plumbing under the sink was not insulated, "which is also in violation of the ADA." But the defendant correctly points out that the settlement did not require modifications to the sink height or plumbing.

7.1.A.3, the need for Court intervention may have been averted. Although the Court does not accept the plaintiffs' arguments in favor of a protective order, the Court nevertheless quashes the defendant's discovery requests. The defendant does not and cannot deny that it failed to install automatic bathroom doors and an ADA-compliant toilet-paper dispenser. Because these are the only Consent Decree violations the plaintiffs have proven, and they are not factually contested, the defendant has not demonstrated any need for answers to its requests for admission. Put differently, discovery would not result in a more favorable outcome to the defendant.

### III. Remedies

Paragraph 6 of the Consent Decree provides that: "[i]n the event of non-compliance with the terms and conditions of this agreement, Plaintiffs shall be entitled to immediate injunctive relief." The plaintiffs, having established the defendant did not substantially comply with the terms of the Consent Decree concerning: (1) the installation of automatic doors in a) Miami Subs and b) Wendy's; and (2) the installation of an ADA-compliant toilet-paper dispenser in Miami Subs, the Court concludes that the defendant is non-compliant with the terms and conditions of the settlement agreement. Accordingly, the defendant is hereby directed to perform these modifications, as required by the Consent Decree, within 90 days. Once the modifications are completed, the defendant

shall file a notice with the Court (via CM-ECF) that it has complied with this Order.

Finally, under paragraph 9 of the Consent Decree: "[i]n any action to enforce this Consent Decree, the prevailing party shall be entitled to attorneys' fees, costs and expert fees."[6] The plaintiffs have established the defendant violated of the terms of settlement, and they have obtained relief from this Court as the prevailing party. The plaintiffs are therefore entitled to recover reasonable attorney's fees and costs, according to the parties' agreement in the Consent Decree. The amount of reasonable fees will be determined by the Honorable Magistrate Judge William C. Turnoff, who in awarding fees may, in his discretion, take into consideration that only a fraction of the plaintiffs' grievances were established. Because the issue has not been briefed, the plaintiffs are given until February 21, 2011 at 5 p.m. to file a separate motion for attorney's fees, with all supporting arguments and documentation.

### IV. Conclusion

For the reasons discussed, above, it is hereby:

**ORDERED AND ADJUDGED:**

1. The plaintiffs' amended motion to enforce the Consent Decree is granted. The defendant shall make the

---

[6] The ninth numbered paragraph in the Consent Decree, which is the second full paragraph on the second page, is actually numbered "2." This appears to be a clerical error.

   modifications to the men's bathrooms in Wendy's and Miami Subs required by the settlement agreement.

2. Pursuant to the Consent Decree, the plaintiffs are entitled to recover their reasonable costs and attorney's fees in compelling the defendant's compliance with the terms of the settlement, less the defendant's reasonable attorney's fees accrued responding to the plaintiffs' first motion to compel.

3. The plaintiffs shall file a separate motion for costs attorney's fees, including all billing sheets and supporting documentation, by February 4, 2011, at 5 p.m. The costs/fees issue is hereby referred to Magistrate Judge Turnoff for determination, pursuant to the Local Rules.

4. The defendant has not denied the plaintiffs' allegations pertaining to the automatic bathroom doors and/or toilet-paper dispenser in Wendy's and Miami Subs. Thus, the Court perceives no reason to permit further discovery on the compliance issues. The plaintiffs' motion for a protective order is denied as moot.

DONE AND ORDERED in Miami, Florida, February 3, 2011.

*[signature]*
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE